### SAYRE *vs.* PECK.

Upon the dissolution of a copartnership between S. & P. an agreement was entered into by them, by which it was stipulated that the business of the firm should be settled by S., and that all the personal property, books and effects of the firm should be delivered over to him, and that he should provide for, and pay, all the debts and liabilities, and charge the same to the firm. By the fifth clause of the agreement, it was provided that when all the debts and liabilities of the firm should be paid and discharged, then the accounts of the partners should be made equal by S. selecting and taking to his own account, from the assets or effects of the firm, an amount sufficient to equalize the accounts of the partners, with interest, (P. being indebted to the firm;) and that the balance of the assets and property of the firm should belong to, and be immediately divided equally between the parties. At the time the agreement was executed, the effects of the partnership exceeded, by more than $26,000, its debts and liabilities. And the parties did not contemplate a deficiency of assets to pay the debts and equalize the partnership accounts. All the debts having been paid, debts to the amount of about $26,000 still remained due to the firm, most of which were uncollectible. A balance of $1568,28 being still due from the firm to S., he filed his bill against P., praying for an account and a settlement of the copartnership affairs, and that P. might be decreed to pay the balance which should be found due from him. *Held* that there was nothing in the language of the agreement which furnished any evidence that S. intended to release P. from his liability to contribute his share towards the losses of the partnership; or that P. was stipulating for an indemnity against his liability to pay any balance which might be justly due from him to his copartner, after a full administration of the partnership effects. Nor that either party intended, or expected

S. would take to his own account, in payment of any portion of the amount due him from the partnership, doubtful or uncollectible debts, at their nominal value.

*Held also*, that the deficiency of the partnership effects to pay the debts and liabilities of the firm, and then to pay S. the amount which should be due to him from the firm, was assumed as the basis of the agreement. That those effects having turned out to be insufficient for those purposes, it was a case of mutual mistake or misapprehension as to the value of those effects. And that it would be doing violence to the intention of the parties to make the agreement applicable to the existing state of things.

Where a written contract is capable of a sensible construction, and there has been no fraud or imposition in obtaining it, such construction must be determined by the language found in the instrument itself, and cannot be affected by parol evidence of what was said by the parties at, or before, the time of execution.

In EQUITY. On the second day of March, 1839, the plaintiff and the defendant entered into copartnership as merchants, under the firm of "Peck & Sayre." Peck was to furnish $10,000 capital, and Sayre $15,000. The profits and losses of the partnership were to be shared and borne equally. The partnership having been dissolved, the following agreement was executed by the parties on the 23d day of January, 1843.

"Whereas the copartnership heretofore existing between the subscribers, John Peck and David L. Sayre, under the firm of Peck & Sayre, has been dissolved by its own limitation: now in consideration of the premises and of one dollar by each to the other in hand paid, the said John Peck and David L. Sayre covenant and agree with each other as follows. First. That the business of the said firm of Peck & Sayre shall be exclusively settled by said Sayre; who, for this purpose is to use the name of the said firm in liquidation. And all the personal property, books, and effects of said firm are to be delivered over to and taken charge of by said Sayre, for the benefit of said firm, and the said Peck is not to collect or receive any of the debts due to said firm. Second. All the debts and liabilities are to be provided for and paid by said Sayre and charged by him to said firm. Third. All shipments or consignments of goods to said firm, not yet received, but that may hereafter arrive, are to be received by said Sayre on his own account; and all acceptances or any liability that said firm may have come under, or incurred, against or on account of said shipments or

consignments not yet arrived are to be provided for and paid by said Sayre individually. Fourth. Neither of said partners is to draw or receive any thing from said firm for his individual use until all the debts and liabilities of the firm are paid. Fifth. When all the debts and liabilities of said firm are paid and discharged, then the accounts of said partners are to be made equal by *said Sayre selecting and taking to his own account, from the assets or effects of the firm, an amount sufficient* to equalize the accounts of said partners with interest, (said Peck being now indebted to the firm,) and the balance of the assets and property of the said firm is to belong to and be immediately divided equally between said Peck and Sayre. Sixth. The books and papers of said firm are to be kept by said Sayre at his store or office, and said Peck or his agent or personal representatives, is, or are, at all times to have free access to them during the usual business hours ; and may examine such books, and make such extracts or copies from them as he or they may see fit. Seventh. Said Sayre covenants and agrees to apply the effects and property of said firm as above specified. Eighth. Said Peck hereby irrevocably authorizes and empowers said Sayre to use his name or the name of said firm for the purpose of instituting suits, or any other purpose that may be deemed necessary and proper, in the liquidation and settlement of the business of said firm. Ninth. Said Sayre is not to receive any compensation for his own services in settling the business of said firm, nor is he to make any charge for clerk hire ; but is to be allowed all other necessary and proper charges and expenses. It is understood that under the foregoing agreement said Sayre is not to compromise or settle any debt due or owing to said Peck & Sayre for less than its face without the consent of said Peck ; provided said Peck is then in this state, otherwise said Sayre is to have full power to compromise as he may see fit."

At the time of the dissolution a statement of the affairs of the partnership was made, which shewed that Peck was indebted to the firm $20,023,43, and that the firm owed Sayre $5377,39. The debts due the firm amounted to $73,568, 25, and the out-

Sayre v. Peck.

standing debts against the firm were $47,241,39. Under the agreement of the 23d of January, 1843, Sayre proceeded to pay off the debts of the firm, and at the time of filing the bill in September, 1845, all the debts had been paid, and the amount due to Sayre from the partnership had been reduced, by collections, to $1568,28. About $26,000 still remained due to the firm, most of which was uncollectible. The bill prayed for an account and a settlement of the copartnership affairs, and that Peck might be decreed to pay the balance which should be found due from him. The cause was heard upon pleadings and proofs.

*C. O'Conor & P. Callaghan,* for the plaintiff.

*Murray Hoffman,* for the defendant.

HARRIS, J. The only question in this case is, what effect shall be given to the fifth clause in the agreement of the 23d of January, 1843, which provides that, after the plaintiff shall have discharged all the debts and liabilities of the partnership, "the accounts of the partners shall be made equal by said Sayre selecting and taking to his own account, from the assets or effects of the firm, an amount sufficient to equalize the accounts of said partners, with interest." The defendant insists that, by this agreement, he was discharged from all personal liability to the plaintiff for any deficiency of partnership effects to pay the debts and equalize the accounts of the partners. On the contrary, the plaintiff insists that the agreement only related to the administration of the affairs of the partnership, and was not intended to change or affect the rights of the parties upon a final settlement of their partnership business. What, then, is the construction to be given to this clause of the agreement? It is stipulated in the articles of copartnership, that the profits of the business shall be equally divided, and the losses equally borne, by the parties respectively. The final settlement was to be upon the basis of equality; the same rule which this court would have prescribed, in the absence of any

agreement of the parties on the subject. This rule must still prevail, unless it is made satisfactorily to appear that the parties themselves have agreed upon different terms of settlement. In giving a construction to the terms which the parties have employed to express their agreement, it is proper to look at the state of things existing with reference to the subject matter of the agreement, at the time it was made. If we do so, we find that the effects of the partnership exceeded, by more than $26,000, its debts and liabilities. And there is nothing to show that the parties contemplated that under any circumstances, there could be a deficiency of assets to pay the debts and equalize the partnership accounts. It seems very clear that the agreement was based upon the assumption of a sufficiency of partnership effects to carry its provisions into effect. There certainly is nothing in the language of the agreement which furnishes any evidence that the plaintiff intended to release the defendant from his liability to contribute his share towards the losses of the partnership; or that the defendant was stipulating for an indemnity against his liability to pay any balance which might justly be due from him to his copartner, after a full administration of the partnership effects. Nor is there any thing to show that either party intended, or expected, the plaintiff would " take to his own account," in payment of any portion of the amount due him from the partnership, doubtful or uncollectible debts, at their nominal value. A state of things is now shown to exist, which was not anticipated by the parties when they executed the agreement, and to which, therefore, the agreement cannot, upon well settled principles, be made applicable. It is a case of mutual mistake, or misapprehension, as to the value of the partnership effects to be disposed of under the provisions of the agreement. The sufficiency of those effects to pay and discharge the partnership debts and liabilities, and then to pay the plaintiff the amount which should be due to him from the firm, is assumed as the basis of the agreement. And now, when it appears that the parties were mistaken in this assumption, it would be doing violence to their intention,

to make the agreement applicable to the existing state of things. (1 *Story's Eq. Juris.* §§ 142, 143, 144.)

The parol evidence which has been produced by the parties to show what was their understanding when the agreement was executed, is clearly inadmissible. The wisdom of the rule which confines parties to their written contracts, in exclusion of all anterior verbal communications, is strongly illustrated in this very case. Mr. Havens, one of the counsel for the parties, who prepared the agreement of the 23d of January, and who is the subscribing witness thereto, understood from the parties, at the time, that the assets or effects to be taken by Sayre to his own account, were to be so taken, not at their nominal or par value, but at their *actual* value. While, on the other hand, Mr. Griffin, the partner of Mr. Havens, with whom the parties also consulted in relation to the transaction, understood that Sayre was to take his pay in assets of the partnership, without recourse to the defendant in any event. All the witnesses who have spoken on the subject agree, however, that the partnership effects were supposed to be sufficient to pay the debts, and make up the amount of the defendant's deficiency. This fact will assist in accounting for the witnesses differing so widely in their understanding of the intention of the parties. It cannot be necessary to refer to authorities to show, that where a written contract is capable of a sensible construction, and there has been no fraud or imposition in obtaining it, such construction must be determined by the language found in the instrument itself, and cannot be affected by parol evidence of what was said by the parties at or before the time of execution. The law considers the written instrument, solemnly sanctioned by the signatures of the parties, as much safer evidence of the real intention of the parties, than any account given of the transaction by those who happened to be present, whose memories may be frail and fallible, whose minds may be influenced by prejudice and partiality, and who may have incorrectly apprehended the intention of the parties.

It was sought by the counsel for the defendant to take this case out of the general rule in relation to the effect of parol ev-

idence, by referring to the particular frame of the pleadings. It is true, that the intention of the parties in respect to the matters contained in the fifth clause of the agreement of the 23d of January, is put at issue by the bill and answer; but I cannot see how this fact can render competent, testimony which would otherwise be inadmissible. The rule must still be applied, that where there is a writing expressing the contract of the parties, that alone shall be proof of their intention. The case of *Coutts' Trustees* v. *Craig*, (2 *Hen. & Munf.* 618,) which was relied upon by the defendant's counsel, does not, I think, sustain his position. In that case, a bill was filed for the specific performance of a contract for the sale of land. The defendant denied that the contract embraced as much ground as was contended for by the plaintiff; and upon such an issue it was held that parol evidence might be resorted to, not to vary the effect of the contract itself, but to supply the facts necessary to give effect to the intention of the parties as it appeared upon the face of the contract.

But even if parol evidence were admissible to show what was the actual understanding of the parties, I do not think the defendant has succeeded in showing satisfactorily that the construction of the writing is in accordance with the actual agreement of the parties at the time the writing was made. The most, I think, that can be made of the testimony is, that it leaves the question as to the real agreement of the parties extremely doubtful; and then the fair inference would be, that the writing expressed such agreement exactly as the parties understood it to be.

I have purposely omitted any reference to the statement contained in exhibit No. 4, which purports to show the condition of the partnership affairs on the first of July, 1844, and in which the plaintiff is charged with the debts then estimated to be good. I have no intention to express any opinion with reference to the effect of that paper, further than to say, that I think it has no proper bearing upon the construction to be given to that clause of the agreement of the 23d of January, under consideration.

If upon a reference, it shall appear that the plaintiff intended, when this statement was made, " to take to his own account" the good debts mentioned in that statement, amounting to $14,410,62, it might perhaps properly be regarded as an execution of the agreement, to that extent.

There must be the usual decree for an account. And for that purpose, J. Newland Cushman, or any other suitable person, to be agreed on by the parties, may be appointed a referee. The pleadings and proofs may be used by either party on the reference. The question of costs, and all further directions, are to be reserved until the coming in of the report.

SAME TERM.    *Before the same Justice.*